## A. F. SHAPLEIGH HARDWARE CO. v. PRITCHARD *et al.*

### No. 3715.   Opinion Filed May 12, 1914.

#### (140 Pac. 1136.)

1.   **UNITED STATES MARSHALS—Duties—Performance—Return of Execution—Omission—Liability on Bond.**   Under section 3061, Mansf. Dig. of Ark., extended over and in force in the Indian Territory prior to statehood, a United States marshal, who received an execution for service and failed to return the same "within 60 days from its date," the sureties on his official bond were liable at the suit of an execution creditor for the amount of the execution, unless the failure to make return was caused by the act, instructions, or was waived. by such creditor.

2.   **SAME — Execution — Failure to Return — Liability — Measure of Damages.**   In such action the liability is not limited to the injury sustained by the execution creditor by a failure to make the return, but is fixed by statute in the amount of the execution and six per cent. interest thereon.

(Syllabus by Galbraith, C.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by the A. F. Shapleigh Hardware Company against Geo. K. Pritchard and the Central Trust & Guaranty Company. Judgment for defendants, and plaintiff brings error.   Reversed and rendered.

*A. C. Markley,* for plaintiff in error.

*Latham & Harris,* for defendants in error.

Opinion by GALBRAITH, C.   This was an action by the execution creditor against the marshal, and the sureties on his official bond, for failure to make return of an execution delivered to the marshal for service.   A jury was waived, and the cause was submitted to the court upon the following agreed statement of facts:

"That plaintiff was and is a corporation as alleged; that Geo. K. Pritchard was the duly appointed, qualified, and acting United States marshal as alleged; that said Geo. K. Pritchard, as principal, and said Central Trust & Guaranty Company,

of West Virginia, a corporation, as surety, made, executed, and filed said United States marshal's bond as alleged; that on February 8, 1907, the judgment of the United States Court, a court of record, sitting at McAlester, in the Central district of the Indian Territory, was duly rendered and entered in favor of said A. F. Shapleigh Hardware Company, and against one W. B. Gay, for the recovery of $126.15, with 6 per cent. interest per annum and costs taxed at $4.45; that therefore on March 1, 1907, there was duly issued out of said United States Court and placed in the hands of said United States marshal, Geo. K. Pritchard, for execution and return within sixty days therefrom, a writ of execution directing him to collect out of the estate of said W. B. Gay the said judgment in favor of A. F. Shapleigh Hardware Company and against W. B. Gay for $126.15, with interest at 6 per cent. per annum and $4.45 costs; that thereafter, on April 12, 1907, said United States marshal, acting under said writ of execution, and by direction of A. C. Markley, as attorney for said A. F. Shapleigh Hardware Company, did levy upon a certan twenty-acre tract of land in the Fifteenth recording district of the Central district of the Indian Territory as the property of said W. B. Gay, and then with the knowledge, consent, and approval of said attorney, A. C. Markley, did advertise said property levied upon for sale on the 4th day of May, 1907; that thereafter, on May 4, 1907, at the time and place said property was advertised for sale, said A. C. Markley appeared and along with others made bids on said property, and the crier of said sale declared the property sold to A. C. Markley at his bid of $130 therefor, and immediately thereafter, upon being informed by said United States marshal that no alias execution of *venditioni exponas* had been issued for the sale of said property and that the original execution had not been returned into court, and that the advertisement for the sale of said property had only been printed in one issue of the McAlester News, a weekly newspaper printed and published at McAlester, Indian Territory, repudiated his bid made for said property; that said writ of execution was never returned to the court from which it was issued within the 60 days from its issue or thereafter, and is still in the possession of said Geo. K. Pritchard and his attorneys; that but one writ of execution was issued in said cause, and no alias writ of execution or *venditioni exponas* was ever asked for by said United States marshal, or by said A. F. Shapleigh Hardware Company, or by its attorney, A. C. Markley; that aforesaid judgment of A. F. Shapleigh Hardware Company against said W. B. Gay has never been paid

settled, or satisfied, and remains of record wholly due and unpaid, and not affected other than by the proceedings hereinabove stated. Plaintiff's suit is based upon the law stated in sections 3061, 3063, 2967, 2971, and 3049 of Mansfield's Digest, Ark., or sections 2176, 2177, 2082, 2086, and 2164 of Indian Territory Statutes, introduced in evidence. A. C. Markley, Attorney for Plaintiff. Latham & Gresham, Attorneys for Defendants."

The court found for the defendants, and rendered judgment against the plaintiff for costs. To review that judgment, an appeal has been duly perfected to this court.

The plaintiff in error's cause of action is based upon certain sections of the statutes of Arkansas extended over and in force in the Indian Territory at the time this controversy arose. These statutes render the sheriff or marshal and the sureties on his official bond liable for failure to make return of an execution on or before the return day named therein.

The only question presented by this record is one of law—whether or not, under the facts agreed upon, the law renders the defendants in error liable.

In the case of *Grubbs v. Needles et al.*, 70 Fed. 199, 17 C. C. A. 60, the Circuit Court of Appeals for the Eighth Circuit said, in regard to one of the sections of the statute of Arkansas relied upon by the plaintiff in error:

"We have decided at the present term that section 3061, Mansf. Digest, is in force in the Indian Territory, and that proceedings thereunder may be had against the marshal and his sureties. *Mfg. Co. v. Needles,* 69 Fed. 68 (16 C. C. A. 132)."

Judge Caldwell, who rendered the opinion of the court in the Grubbs case, *supra*, said, in regard to the conduct of the creditor's attorney as affecting the failure of the marshal to make the return:

"Touching the defense based on the alleged directions of the plaintiff to the marshal, we do not deem it necessary to do more than to call attention to the rule announced by the Supreme Court of Arkansas in a proceeding under this statute where that defense was relied on: 'The sheriff is not excused from returning an execution by any conduct of the plaintiff which falls short of showing that the nonreturn resulted from the act or instructions of the plaintiff, or was ratified or waived by him.'"

It is not material that the execution in the instant case was levied upon real estate, and that the judgment upon which the execution issued was a lien upon this real estate, or may have been a lien upon it, and that therefore the creditor lost nothing by the failure of the marshal to make a return of the execution. Nor is it material that the execution creditor was the purchaser at the sale of the property conducted by the marshal under the execution. The statute makes it the duty of the marshal to return every execution on or before its return day, and prescribes as a penalty for failure to discharge this duty that he shall be liable for the amount of the execution and interest, and under the construction of the statute as made by the Supreme Court of Arkansas there seems to be no escape from this penalty where it has been incurred.

In *Jett v. Shinn,* 47 Ark. 378, 1 S. W. 694, it is said:

"If the sheriff was misled by the advice of the plaintiff's attorney, so that he postponed the date of sale beyond the lifetime of the writ, this may furnish a satisfactory reason for not selling, and for not having the money to render to the plaintiff; but it is no excuse for not returning the process upon its return day. *Norris v. State,* 22 Ark. 524."

Again, it is said in *Hawkins v. Taylor,* 56 Ark. 45, 19 S. W. 105, 35 Am. St. Rep. 82:

"The execution was returnable, by its terms and by the law, 'within 60 days' from its date. The sixtieth day after its date was Sunday, and the execution was returned the next day thereafter. It is argued that, as no return could be made on Sunday, the officer might legally postpone the act until Monday. But the statute will not admit of that construction. It does not require the return to be made upon the sixtieth day only. If it did, and that day were Sunday, then the argument would be forcible. But executions are returnable 'in sixty days from their date' (Mansf. Dig. sec. 2971), and a legal return may be made by the sheriff at any time after the writ comes to his hands—even a return of *nulla bona,* if he knows that the defendant is insolvent, and is willing to take the hazard of his remaining so. *Reeves v. Sherwood,* 45 Ark. 520. The penal statute, moreover, prescribes that he shall be liable for a failure to make his return 'on or before the return day.' 'On or before the return day' does not mean after the return day. *Alston*

*v. Falconer,* 42 Ark. 117. And as the last day fell upon Sunday, it was the officer's duty to make the return on the preceding Saturday. Crocker on Sheriffs, sec. 40; Sedgwick, Stat. & Const. Law, p. 358; Sutherland, Stat. Const. sec. 115; *Haley v. Young,* 134 Mass. 364; *Ex parte Simpkin,* 105 Eng. C. L. 392. See Endlich, Int. of Stat. sec. 393. The return was not made on or before the sixtieth day, and the penalty was incurred under section 3061."

Again, in *Wilson v. Young,* 58 Ark. 593, 25 S. W. 870, Mansfield, Justice, speaking for the court, said:

"The section of the digest mentioned above provides that, if the officer receiving an execution shall not return it 'on or before the return day therein specified,' he 'shall be liable and bound to pay the whole amount of money in such execution specified'; and the next succeeding section (3062) provides that any person aggrieved by the nonpayment of such amount 'may have his' action against the officer and his sureties upon his official bond.'"

And at page 599 of 58 Ark., at page 872 of 25 S. W., in this opinion, the court said:

"Such is the effect given to a similar statute by the Supreme Court of Illinois in *Robertson v. County Commissioners,* 5 Gilman, 559, 567, which was an action upon the official bond of a constable for his failure to return an execution. With reference to the contention made in that case that, in the absence of any real injury, the damages recoverable were only nominal, Judge Trumbull, in delivering the opinion of the court, said: 'The statute requires an execution to be returned within a certain time, and, lest this requirement should be disregarded, provides that, if a constable will continue to violate his duty by failing to return an execution for ten days after its return' day, both he and his securities shall be liable to the party aggrieved for the full amount of the execution, and interest upon the judgment on which it issued. It was undoubtedly competent for the Legislature to impose such a liability for a failure by the constable to perform his duty, and the numerous cases cited to show that, as a general rule, the obligors upon a bond are only liable to respond in damages to the amount of the real injury occasioned by the breach complained of can have no application to this case, because the Legislature has declared what the measure of damages shall be.' And so we may say in this case that the rule stated by the authorities cited by the appellants is not the rule

in Arkansas; and the fact that it does not apply here in suits like this is noted by Mr. Sutherland in his treatise on Damages. 2 Suth. Dam. sec. 488, note 3"—*Herr & Company v. Atkinson et al.,* 40 Ark. 337.

In *Jones v. Goodbar,* 60 Ark. 182, 186, 29 S. W. 462, 464, the court said:

"The penalty affixed by the statute, as applied to facts of this case, seems to be extremely severe. The defendant in the execution was insolvent. The justice made a memorandum in his docket of the substance of the report of the constable, and in attempting to renew the execution a second time—a proceeding for which we find no warrant in the statute—he copied this memorandum in the execution. Although this memorandum of the justice cannot be taken as the return of the constable, still it does not appear that the appellee could have been misled or injured in any way by the failure of the officer to make the return. But while we feel that the statute, in its application to cases such as this, is somewhat harsh, yet, as was said by the court in a case similar to this, the law is thus written, and the courts must enforce it."

A similar construction to that placed upon the statutes of Arkansas by the Supreme Court of that state has been placed upon a like statute of our own by this court. In *Henderson-Sturges Piano Co. v. Smith, Sheriff,* 33 Okla. 335, 125 Pac. 454, the syllabus reads:

"Section 5997, Comp. Laws 1909 (Rev. Laws 1910, sec. 5180), which provides for the amercement of sheriffs, is imperative in its terms, and grants no discretion to the court. When a sheriff fails to make return of a writ of execution as required by statute, it is the duty of the court to amerce him, whether his omission results from willful wrong or mere neglect, and whether such omission has resulted in actual injury or not."

Under these authorities there seems to be no escape from the penalty prescribed against the marshal and his sureties, and their liability for the amount of the execution and interest thereon under the agreed statement of facts. The execution was delivered to the marshal. He failed to return the same within 60 days as commanded therein, and thereby incurred the penalty prescribed by the statute. The trial court erred in holding otherwise and rendering judgment for the defendants.

This cause should be reversed and remanded to the district court of Pittsburg county, with directions to set aside the judgment rendered in favor of the defendants in error, and to render judgment against them, and in favor of the plaintiff in error for the amount of the execution, together with 6 per cent. interest thereon.

By the Court: .It is so ordered.